# In the United States Court of Federal Claims

No. 11-715C

(E-Filed: June 29, 2021)

|  |  |
|---|---|
| JOSEPH GALLIMORE, <u>et al.</u>, | ) |
| | ) |
| Plaintiffs, | ) Class Action Settlement; Fairness Hearing; |
| | ) RCFC 23(e). |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## ORDER

On May 18, 2021, the court held a fairness hearing on the parties' settlement agreement, pursuant to Rule 23(e) of the Rules of the United States Court of Federal Claims (RCFC). <u>See</u> ECF No. 220 (hearing transcript). Following the fairness hearing, and pursuant to the court's May 20, 2021 scheduling order, the parties filed their final settlement agreement with addenda and attachments. <u>See</u> ECF No. 218 (settlement agreement). For the following reasons, the court **APPROVES** the parties' settlement agreement, ECF No. 218.

I.      Background

Plaintiffs in this case were certified as a class on October 31, 2016, to include "all . . . part-time Field Representatives and Senior Field Representatives employed by the [United States] Census Bureau—from October 28, 2005 to the present—who performed nonovertime work on a Sunday and did not receive Sunday premium pay for that work under 5 U.S.C. § 5546(a)." <u>See</u> ECF No. 76 at 30-31 (opinion certifying class). The settlement now before the court is the agreement reached by the parties as to claims to recover Sunday premium pay brought by 3,487 members of the class, as alleged in plaintiffs' amended complaint, filed on July 2, 2019. <u>See</u> ECF No. 218 at 42; ECF No. 166 (amended complaint).

On December 18, 2020, the plaintiffs filed an unopposed motion in which they requested that the court preliminarily approve the settlement agreement, approve the

proposed notice of a fairness hearing, and conduct a fairness hearing to consider final approval of the agreement. See ECF No. 189. The court granted the motion on March 3, 2021, see ECF No. 196, and notice was sent to the class members in accordance with the procedures approved by the court, see ECF No. 202 (plaintiffs' April 8, 2021 notice of compliance).

The court conducted a fairness hearing on May 18, 2021. See ECF No. 220. At the fairness hearing, the plaintiffs asked the court to approve the settlement agreement, and defendant consented to the request. See id. at 6-10. The parties received only one objection to the settlement agreement, which was filed on the docket in this case on May 12, 2021. See ECF No. 209 (plaintiffs' notice of objection). During the fairness hearing, plaintiffs' counsel explained the nature of the objection, stating that the objecting class member believes that she:

> had not been credited in terms of her proper pay grade. It appears from what she submitted—because she did include some additional documentation beyond her letter indicating that she was objecting—indicates that that issue in terms of her pay grade was resolved in approximately—it looks like 2016, Your Honor—at which time she did get a retroactive pay—a sum in pay.

> However, that retroactivity went only back six years based on the Barring Act. She certainly objects to that[, but that issue] is really beyond the scope of the Gallimore case.

> . . .

> She does not appear to object to the sum or the percentage asked for attorneys' fees, but says that, you know, the [c]ourt should order the Government to pay that sum. And she does seem to have the misunderstanding that the settlement provides that the fees for the claims administrator would come out of the class members' awards. That is actually not accurate. The Government is reimbursing both the prospective fees and the fees already incurred directly as part of their settlement funds.

> And, finally [she seems to suggest that] the Government should be ordered to pay 100 percent of the possible Sunday premium pay incurred by this class, as well as of the litigation expenses.

ECF No. 220 at 15-17.

Subsequent to the fairness hearing, the court granted the parties leave to file an addendum to the settlement agreement for purposes of ensuring that the final settlement amounts reflect the proper taxes due, as several of the class members' taxing jurisdictions

had changed.[1]  See ECF No. 217 (order); ECF No. 216 (joint status report explaining the reason for the addendum).  The parties filed the final settlement agreement with addenda and attachments on May 25, 2021, and that final agreement is now before the court.  See ECF No. 218.

According to the terms of the settlement agreement, defendant agrees to pay a total of $12,613,936.96, "minus any offsets required by law, to the Administrator for deposit in the Settlement Trust."  See ECF No. 218 at 2 (revised amount reflected in second addendum), 43 (obligation to pay settlement amount into settlement trust).  That amount is divided as follows:

1)  $12,018,087.72 (Back Pay to the end of March 2020 and interest through December 2020 inclusive of 30 percent attorney fees)[;]

2)  $78,865.23 (Class Counsel's costs and expenses)[;]

3)  $32,156.00 (Unpaid expenses of the Class Administrator)[; and]

4)  $484,828.01 (Employer's share of payroll taxes).

Id. at 2.  After receiving the settlement amount, the class administrator will distribute the funds as follows:

1)  $32,156.00 to be retained by the Class Administrator;

2)  $6,221,518.93 to Class Members, representing their net payments after reduction of attorney fees and estimated taxes as reflected in the Second Revised Attachment A;

---

[1]  This request to file an addendum was the final effort to ensure the accuracy of the settlement agreement after several versions of the agreement had been filed.  The parties first filed the settlement agreement with the court on December 18, 2020.  See ECF No. 189 (motion for preliminary approval attaching the settlement agreement).  On May 6, 2021, the parties filed a joint motion to update the settlement agreement to provide accurate tax estimates.  See ECF No. 205 (joint motion).  The court granted the motion, but upon review of the updated agreement, discovered several errors with the accuracy of the numbers and the method of execution.  See ECF No. 210 at 1-2 (status report order).  The court directed the parties to file a corrected version of the settlement agreement, see id. at 2, which the parties did by addendum on May 14, 2021, see ECF No. 212 (settlement agreement with addendum and attachments).  The May 14, 2021 version of the agreement was the subject of the fairness hearing, but the court permitted the final revision, which was filed on May 25, 2021, ECF No. 218 (settlement agreement with second addendum and attachments), to account for changes in the amount of taxes due by certain class members.

3) $3,684,287.90 to Class Counsel reflecting attorney fees of $3,605,422.67 (deducted from the Back Pay and Interest) and incurred expenses and costs of $78,865.23 (as agreed by the parties and included in the Settlement Agreement).

Id. at 3.  The remainder of the settlement funds are the amounts to be withheld "for Class Members' estimated Federal, state and local taxes as reflected in the Second Revised Attachment A [in an amount of] "$2,191,146.12," and "Defendant's contributions for OASDI[2] and Medicare on the back pay which is to be remitted to the proper authorities by the Claims Administrator [in an amount of] $484,828.01." Id.

In exchange, class members have agreed to:

release, waive, and abandon all claims against the United States, its political subdivisions, its officers, agents, and employees, arising out the complaint or otherwise involved in this case relating to Sunday premium pay, regardless of whether they were included in the complaint, including but not limited to any claims for costs, expenses, attorney fees, and damages of any sort related thereto.

Id. at 43.

Upon receipt of the settlement funds, the class administrator will withhold all federal, state, and local income taxes owed by each class member, along with defendant's share of OASDI and Medicare contributions, and remit all withheld funds to the proper authorities.  See id. at 44.  The class administrator will also provide the documentation of these actions to each class member.  See id.

The class administrator will mail the proper amount and tax forms "to each Class Member at their last known address." Id.  The settlement agreement details the timing of these payments, and the protocol for managing undeliverable checks.  See id. at 44-45.

II.    Legal Standards

Under RCFC 23(e), "[t]he claims, issues, or defenses of a certified class . . . may be settled, voluntarily dismissed, or compromised only with the court's approval." "[T]he court may approve [the settlement] only after a hearing and only on finding that it

---

[2]    The settlement documents do not define the term "OASDI," but the court understands that term to refer to the Social Security Administration's Old-Age, Survivors, and Disability Insurance program.  See Social Security, Contribution and Benefit Base, https://www.ssa.gov/oact/cola/cbb.html (last visited Jun. 28, 2021).

is fair, reasonable, and adequate." RCFC 23(e)(2). In reaching this judgment, the court considers whether:

>   (A)     the class representatives and class counsel have adequately
>           represented the class;

>   (B)     the proposal was negotiated at arm's length;

>   (C)     the relief provided for the class is adequate, taking into
>           account:

>>      (i)     the costs, risks, and delay of trial and appeal;

>>      (ii)    the effectiveness of any proposed method of distributing
>>              relief to the class, including the method of processing class-
>>              member claims;

>>      (iii)   the terms of any proposed award of attorney's fees,
>>              including timing of payment; and

>>      (iv)    any agreement required to be identified under RCFC
>>              23(e)(3); and

>   (D)     the proposal treats class members equitably relative to each other.

Id. The court has discretion to accept or reject a proposed settlement, but it may not alter the proposed settlement; nor may it decide the merits of the case or resolve unsettled legal questions. Adams v. United States, 107 Fed. Cl. 74, 75-76 (2012) (citing Evans v. Jeff D., 475 U.S. 717, 726-27 (1986); Nat'l Treasury Emps. Union v. United States, 54 Fed. Cl. 791, 797 (2002)).

III.    Analysis

The proposed settlement agreement is the result of dedicated, arms-length negotiations between the parties. See ECF No. 220 at 10-13. The parties worked to locate the proper payroll data for the class members, which was an involved process due to multiple payrolls systems in use during the relevant time period. See id. at 11-12. Through the settlement agreement, the class members will receive approximately 88.5 percent of the back pay they are owed based on those records, and 100 percent of the interest thereon. See id. at 20. Plaintiffs' counsel explained that the settlement amount reflected "a modest compromise based on [counsels'] evaluation of risk and the time that [it would] take to litigate this case to a final end post any appeal." Id. at 20-21.

In addition to the monetary compensation that the settlement achieves for the class members, the court notes that the litigation also achieved the result of modifying Census Bureau policy with regard to Sunday premium pay, which will be an ongoing benefit to the agency's employees. Counsel explained that "class members, as well as other part-time field reps, have now had the benefit of Sunday premium pay and that is a policy that we certainly anticipate will continue." Id. at 20.

It is clear to the court that the parties have worked diligently, and have competently represented their respective clients' interests in this endeavor. Class members received notice by postcard, email, and through a posting to the case website. See ECF No. 18-19. Counsel reports that "the reaction of the class members has been very favorable, with the exception of one class member." Id. at 21. As described above, the court understands the objecting class member's dissatisfaction with receiving less than 100% of what she believes she is owed, but such compromise is inherent in the nature of settlements. In addition, the statute of limitations with which she takes issue, restricts the jurisdiction of this court. As such, there is nothing the court can do to change that circumstance. For these reasons, the substance of this objection will not preclude approval of the settlement agreement.

Plaintiffs' counsel then addressed the negotiated attorneys' fees award of "30 percent of . . . the actual monies going to class members." Id. at 22. In support of this figure, counsel noted: (1) the high-level of participation, with seventy-three percent of the possible class members opting in, see id.; (2) the lack of objections to the attorneys' fee award, see id. at 22-23; (3) the extensive combined experience of counsel, and the hard work invested in developing the facts of the case and communicating with class members, see id. at 23-24; (4) the number of relationships with opposing counsel that plaintiffs' counsel needed to develop, as there were five different attorneys assigned to the case by defendant over the years, see id. at 24-25; (5) the complexity of the case, both legally and factually, see id. at 26-27; (6) the extensive time invested in the case by counsel, see id. at 28; and (7) a careful review of case law to determine an appropriate percentage for the fee award, see id. at 28-30. Defendant has no objection to the award. See id. at 30.

Finally, the court finds that the terms of the settlement "treat class members equitably relative to each other." RCFC 23(e)(2)(D). Each of the class members will receive an award based on his or her individual payroll records, and will pay an equal percentage of that award in attorneys' fees. See ECF No. 220 at 12 (describing the parties' efforts to ensure that payroll data was correct); id. at 22 (noting that the attorneys' fee award is a percentage of the "actual monies going to class members").

For the foregoing reasons, the court finds that the proposed settlement agreement is fair, reasonable, and adequate, and comports with the requirements of RCFC 23(e). As the court stated at the hearing:

Based on the information provided to the [c]ourt in preparation for this hearing, including the settlement agreement, notices to class members and notice of compliance indicating that the notice was communicated to class members, along with the presentations made today, the [c]ourt is satisfied that the settlement is fair and appropriately accounts for the interests of all parties.

Id. at 31-32.

As a final matter, the court notes that the settlement agreement requires the parties to act within fifteen days of the court's final approval thereof.  See id. at 47.  The date of this order shall be the date from which all such deadlines are calculated.

IV.    Conclusion

Accordingly, for the foregoing reasons:

(1)    Pursuant to RCFC 23(e), the court **APPROVES** the parties' final settlement agreement with addenda and attachments, ECF No. 218;

(2)    The date of this order, June 29, 2021, shall be the date from which all deadlines included in the amended partial settlement agreement are calculated; and

(3)    Absent the filing of a joint motion for voluntary dismissal, on or before **August 6, 2021**, the parties are directed to **FILE** a **joint status report** informing the court of whether any further proceedings are necessary before this case is closed.

IT IS SO ORDERED.

s/Patricia E. Campbell-Smith
PATRICIA E. CAMPBELL-SMITH
Judge